SAUL FREEDMAN and HELEN FREEDMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent MAC HEED CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Freedman v. Commissioner
Docket Nos. 587-74, 589-74.
United States Tax Court
T.C. Memo 1976-332; 1976 Tax Ct. Memo LEXIS 71; 35 T.C.M. (CCH) 1531; T.C.M. (RIA) 760332; November 1, 1976, Filed Saul Freedman and Helen Freedman, pro se in docket No. 587-74. Saul Freedman (an officer), for the petitioner in docket No. 589-74. Michael P. Casterton, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioners' income taxes and additions to tax under section 6653(a): *72 [1]
Docket No. 587-74
Docket No. 589-74 Year
Deficiency
Deficiency
Addition
1962
$2,146.23
$ 1,626.19
$ 81.31
1963
1,455.99
1,726.50
86.33
1964
7,023.40
10,943.80
1965
811.28
1966
118.90
1967
1,922.17
Certain adjustments have been settled or conceded. The issues remaining to be decided are: 1. Whether certain payments made by the corporate petitioner were deductible either as purchases or business expenses; 2. Whether the corporate and individual petitioners are entitled to deduct amounts claimed as travel and entertainment expenses; 3. Whether any expenses disallowed to the corporate petitioner constituted taxable distributions to the individual petitioners. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Saul Freedman (hereinafter referred to as petitioner) and Helen Freedman are husband and wife. At the time they filed their petition, they resided in White Plains, *73 New York. Their joint Federal income tax returns for the years 1962 through 1967 were filed with the district director of internal revenue in Manhattan, New York. During the years in issue, they used the cash basis method of accounting. Mac Heed Corporation was a New York corporation wholly owned by petitioner at all times from its organization in 1957 until its cessation of business on December 31, 1965. Since 1965, Mac Heed has been inactive but has not been formally dissolved. It filed corporate income tax returns on the accrual basis method of accounting for the years 1962 through 1964 with the district director of internal revenue in Manhattan, New York. Petitioner and his wife were president and secretary, respectively, of Mac Heed during its existence. Mrs. Freedman performed no corporate duties as secretary. At various times during the taxable years in issue, Mac Heed and petitioner individually were engaged in the trade or business of buying and selling scrap material and used equipment. A good deal of this business was conducted outside the United States. Frequently, agents were employed abroad for the purpose of seeking or carrying out particular transactions. *74 Not uncommonly, deals took the form of joint ventures with other persons in the same line of business. In 1962, Mac Heed purchased a quantity of scrap metal in El Salvador, Central America, and sold it to the Georgia Brass Company. In connection with this purchase, Mac Heed employed two individuals, Hugo Ettienne and Jose Escalora, who earned commissions of $2,200 and $1,800, respectively. Ettienne and Escalora wished to be paid in cash, and petitioner obliged them by drawing a check in the name of each on Mac Heed's bank account and cashing the checks with a business acquaintance. [2]
Also in 1962, Mac Heed employed two other individuals, Victor Lee and Ivan Simitch in connection with the purchase of surplus army tanks from the United Kingdom. Lee and Simitch were paid $1,900 each for their services. The payments to Ettienne, Escalora, Lee, and Simitch were recorded on Mac Heed's books not as expenses but as offsets to "commissions earned," an income account. In connection with the El Salvador purchase, petitioner *75 borrowed $4,000 for Mac Heed's account from David Rosendorf and J.C. Watch & Jewelry Co. (hereinafter J.C. Watch). Rosendorf and Jerome Chaback, proprietor of J.C. Watch, were friends of petitioner who made the loans without interest or instruments of indebtedness. The money was expended as part of the purchase price of scrap metal and for expenses in connection with the transaction. It was repaid by Mac Heed's check to Rosendorf on June 18 and checks to J.C. Watch on September 26 and 27, 1962. These payments were charged to purchases on Mac Heed's books. Petitioner, as Mac Heed's sole shareholder and dominant force, did not have a formal arrangement with the corporation regarding payment of travel and entertainment expenses incurred in the course of its business. Petitioner would either pay expenses from his own pocket and obtain reimbursement from the corporation, or take a cash advance and return any unexpended sums. The following amounts were recorded on Mac Heed's books for 1962 as travel and entertainment expense: [3] Amount
Explanation $450
Expense of trip to Europe
107
Expense of trip to Guatemala
75
Expense of inspection trip to Hartford, New York
200
Expense of Jose Escalora
750
Expenses of Hugo Ettienne in Honduras
850
Payments or advances to Bernie Silverman
300
Expense of trip to Atlanta and Miami
270
Expense of trip to Montreal and
Goose Bay, Labrador
*76 Bernie Silverman was an individual whom petitioner met in Guatemala through Ettienne. Mac Heed advanced funds to Silverman for the purpose of investigating business opportunities. On July 16, 1963, Mac Heed issued a check for $2,900 to Robert Woods. This payment was recorded Mac Heed's books as "Purchases (Generator)." The corporation's dealings with Robert Woods involved the purchase and sale of fork lift parts. The following amounts were recorded on Mac Heed's books for 1963 as travel and entertainment expense: [4] Date
Amount
Explanation
2/24/63
$ 165.00
Expense of flight to Los Angeles
3/11/63
1,173.97
Expenses of petitioner, a busi-
ness associate, and their
wives at the Royal Hawaiian
Hotel, Hawaii
1963 [5]
1,890.25
Paid to Harrison Country Club
12/2/63
737.13
Entertainment
*77 Petitioner traveled to Chicago and California in 1965 to investigate a business opportunity for Mac Heed involving a distributorship of fork-lift parts. Mac Heed paid expenses of this trip amounting to $1,150. In 1964, petitioner investigated on his own account a proposed joint venture with one Gafney for the purchase of military surplus goods from the French government. He expended or advanced to Gafney a total of $2,254 [6] in 1964, principally for the purpose of traveling or entertaining French officials. Petitioner attended a surplus dealers' convention in Las Vegas to explore the market for the French goods and incurred expenses of $850, including amounts spent for entertainment. Petitioner and Jerry Pollak investigated a business opportunity together in Mannheim, Germany in 1966. Petitioner paid Pollak's hotel bill in the amount of approximately $89, including food, lodging, and telephone charges, in Mannheim. Petitioner and Mac Heed maintained documentary records of their business expenditures. Where amounts were *78 paid to individuals, signed receipts were obtained. Petitioner maintained diaries of travel and entertainment expenses. Most of these records were kept in steel filing cabinets on premises leased by Mac Heed. The premises were later subleased and the sublessee agreed to allow the files to remain until a place was found for them. When petitioner attempted to reclaim the files, he learned that they had been thrown out by the sublessee. Books of account and cancelled checks, however, had been retained by petitioner and were made available to respondent's agents during audit for the years in issue. ULTIMATE FINDINGS OF FACT Mac Heed incurred ordinary and necessary business expenses for compensation earned by Ettienne, Escalora, Lee, and Simitch totaling $7,800 in 1962. Mac Heed paid David Rosendorf and J.C. Watch $4,000 in 1962 in repayment of bona fide business indebtedness. The following amounts expended by Mac Heed travel and entertainment expenses are ordinary and necessary business expenses: Year
Amount
1962
$1,000
1963
750
The following amounts disallowed to Mac Heed for deductible travel and entertainment expenses for lack of substantiation *79 were expended by Mac Heed for corporate purposes and, therefore, do not constitute constructive distributions from Mac Heed to petitioner: Year
Amount
Post 7/31/63 $250
1965
400
OPINION Respondent examined the returns of petitioner and Mac Heed for the years in issue, together with available records, and determined that some claimed deductions did not represent ordinary and necessary business expenses or were not adequately substantiated. In addition, he charged petitioner with receipt of constructive corporate distributions with respect to deductions disallowed to Mac Heed. The issues presented concern the correctness of these determinations. Section 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." For years after 1962, however, this rule is limited by section 274(d), which provides, in pertinent part: Substantiation Required. --No deduction shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered *80 to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. * * * This section precludes allowance of any deduction within its scope on the basis of estimates or approximations, i.e., by the application of the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), or on the basis of the taxpayer's uncorroborated statement. Section 1.274-5(a), Income Tax Regs. The substantiation requirements are further explicated by respondent's regulations, relevant provisions of which are set forth in the margin. [7]
*81 All of the deductions now in dispute which were disallowed to petitioner, and the bulk of those disallowed to Mac Heed, were determined by respondent to be travel and entertainment expenses subject to section 274. Of the remainder, petitioner testified credibly that payments totaling $7,800 were made by Mac Heed in 1962 for personal services of agents employed abroad. That amount we hold to be an allowable business deduction. It follows that respondent incorrectly charged petitioner with receipt of a corporate distribution in this amount. Petitioner also testified that payments of $4,000 were made in 1962 against indebtedness incurred in Mac Heed's business. We believe that these payments did in fact discharge bona fide indebtedness of Mac Heed and should not be treated as constructive distributions to petitioner. [8] However, we are not satisfied on this record that Mac Heed is entitled to deduct these amounts. Ordinarily loan repayments are not deductible and petitioner did not demonstrate that the purchases and expenses to which the borrowed funds were applied were not separately recorded on Mac Heed's books and allowed as deductions. Furthermore, though petitioner's testimony *82 was quite definite as to the existence of a debt, it was too vague as to the application of the borrowed funds to support a deduction. [9]
In 1963, Mac Heed issued a check to Robert Woods in the amount of $2,900, which was recorded on its books under "Purchases (Generator)." Respondent's agent questioned petitioner on this item and understood him to say it was for the purchase of a "home bar." Petitioner could not recall the nature of this transaction *83 at trial. [10] For lack of evidence to the contrary, we must sustain respondent's determination that this item represented a constructive distribution by Mac Heed to petitioner rather than an allowable business expense. All of the other items which are still in dispute are travel and entertainment expenses subject (except as hereinafter noted (see pp. 19-20, infra)) to the substantiation requirements of section 274. Petitioner and Mac Heed did not, at the time of trial, possess "adequate records" of the expenditures in question within the meaning of section 1.274-5(c)(2), Income Tax Regs. We have only petitioner's uncorroborated testimony that diaries and documentary evidence originally existed which would provide adequate substantiation. Those records were inadvertently lost or destroyed, but it is far from clear that this was the result of circumstances beyond petitioner's control. Cf. Joe F. Gizzi,65 T.C. 342 (1975). Assuming for the sake of discussion, however, that both petitioner and Mac Heed are entitled to the benefit of the *84 "lost records" exception of section 1.274-5(c)(5), Income Tax Regs., we find that they have not substantiated their deductions by "reasonable reconstruction" of their expenditures. Section 274 evidences a clear congressional intent to place the risk of inadequate proof entirely on the taxpayer, and we cannot resurrect the Cohan rule in this context by making allowances for petitioner's incomplete memory of events long past or for the possible or practical unavailability of corroborating witnesses. The "lost records" exception provided in the regulations does not shift the burden of proof to respondent, nor can it relieve petitioner of the necessity of establishing, with reasonable clarity, the elements of time, place, amount, business purpose, and business relationship with respect to each separate expenditure or class of expenditures.Petitioner attempted to reconstruct his and Mac Heed's expenses almost entirely through his own testimony. He made no effort to obtain the testimony of several individuals who might have strengthened and expanded upon the resulting sketchy presentation; nor did he show that all such persons were unavailable to testify, although he did state that *85 he did not know how to contact some of them. Petitioner offered testimony with respect to only a portion of the items disallowed. For some he could make no explanation at all. His practice of obtaining cash advances or lump sum reimbursements in round amounts for expenses incurred on Mac Heed's behalf precludes any attribution of such amounts to specific expenditures or even, in most cases, to general categories such as transportation, lodging, and meals. His description of business purpose or relationship was frequently limited to statements that amounts were expended for "business" or unspecified "deals." He did a great deal of entertaining, but did not specify the persons entertained, their business relationship, or the nature of the entertainment. Clearly, there was a virtually total failure of "reasonable reconstruction" with respect to most of the disputed expenditures included in this category as well as all claimed expenses incurred in Las Vegas and abroad in connection with the Gafney venture. Only a few others require further comment. In 1963, petitioner and an associate named Middleton investigated a business deal in Hawaii. Mac Heed paid the hotel bill for both *86 men and their wives. Petitioner's wife testified that she went along only at Middleton's insistence, to entertain Mrs. Middleton. She confirmed the general business purpose of the trip but stated that her own activities were not directly involved in the business. Neither petitioner nor his wife attempted to identify that portion of the bill attributable to each of them or to the Middletons, the business purpose of particular expenitures, or the respective amounts paid for food, lodging, or other goods or services. [11]
Petitioner also paid a hotel bill for Jerry Pollak in Mannheim, Germany in 1966. He presented a copy of the bill which, under the circumstances, adequately shows the amount, time and place of the expenditure; however, there is insufficient direct or corroborating evidence of business purpose. It does not appear that Pollak was petitioner's employee or agent, or that petitioner was obligated to pay Pollak's expenses. He apparently offered to "pick up the tab" as Pollak was preparing to leave the *87 hotel.We are not satisfied that this payment was more than a casual, friendly gesture. Finally, petitioner and Mac Heed both made numerous payments to petitioner's country club. Petitioner testified that the club was used primarily for business entertainment, but that he and his family used it for personal purposes as well. In addition to the lack of specificity as to particular expenditures, these deductions must be disallowed because it has not been shown that any or all of them were predominantly business related. We are aware of the fact that, in respect of expenditures for travel, entertainment, etc., during the taxable year 1962, the strict standards of section 274 and the regulations thereunder do not apply and that the application of such standards was relaxed with respect to such expenditures for the period January 1 through July 31, 1963. See Rev. Proc. 63-18, 1963-1 C.B. 506.Such being the case, there is some leeway for the use of approximations during those periods under the principle of Cohan v. Commissioner,supra. In this context, we have concluded that, of the amounts of travel and entertainment expenses in question, the allowable *88 deductions to Mac Heed are $1,000 for 1962 and $750 for 1963, and that to this extent petitioner did not receive constructive dividends in those years. Respondent's determinations as to the disallowance of deductions by Mac Heed and petitioners for all taxable vears involved, except as otherwise specifically indicated herein, are sustained. See p. 21, infra, for the treatment of such disallowances as constructive dividends to petitioner. Respondent charged petitioner with receipt of taxable distributions in the amounts of Mac Heed's disallowed travel and entertainment expenses. Although we have not held any such expenses to be deductible, it does not necessarily follow that all of them should be treated as corporate distributions. We believe that petitioner's testimony, though inadequately corroborated for purposes of section 274, established that some of the disallowed expenses were in fact incurred for the benefit of Mac Heed and not of petitioner. We have found such amounts to be $250 in 1963 (post July 31) and $400 in 1965. [12]Cohan v. Commissioner,supra.Consequently, these expenditures did not constitute constructive distributions by Mac Heed *89 to petitioner. [13]Henry Schwartz Corp.,60 T.C. 728 (1973). The remaining amounts of travel and entertainment expenses disallowed to Mac Heed are to be treated as such constructive distributions. Although no formal concession was made, Mac Heed did not argue or introduce any evidence in opposition to respondent's assertion of the addition to tax under section 6653(a) for negligence or willful disregard of rules and regulations. Accordingly, we must sustain respondent's determination. Estate of Ralph B. Campbell,56 T.C. 1, 14 (1971). Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Petitioner had an aversion to cashing large checks at the bank due to a prior unpleasant experience, the details of which are unclear, but irrelevant.↩
3. Only those disallowed items for which some explanation was offered at trial are listed. The stated purpose is derived from the entire record, including the stipulation of facts and testimony.↩
4. See footnote 3, supra↩. 5. Consisting of $634.00 on 2/4/63; $500 on 4/29/63; $365 on 3/4/63; $150 on 6/8/63; and $241.25 on 10/25/63.↩
6. Petitioner also testified that Gafney gambled away another $65,000 advanced to him by petitioner, but no deduction for such an amount is in issue.↩
7. Sec. 1.274-5(c), Income Tax Regs: (c) Rules for substantiation-- (1) In general. A taxpayer must substantiate each element of an expenditure * * * by adequate records or by sufficient evidence corroborating his own statement except as otherwise provided in this section. Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute clear proof of an expenditure for travel, entertainment, or gifts referred to in section 274. * * * (2) Substantiation by adequate records-- --(i) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure * * *. * * *
(3) Substantiation by other sufficient evidence. If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph with respect to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element-- (i) By his own statement, whether written or oral, containing specific information in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. * * *
(5) Loss of records due to circumstances beyond control of the taxpayer. Where the taxpayer establishes that the failure to produce adequate records is due to that loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures. (6) Special rules. (i) Separate expenditure. (a) In general↩. For the purposes of this section, each separate payment by the taxpayer shall ordinarily be considered to constitute a separate expenditure. * * *
8. Respondent did not determine that these payments were income to petitionersin the notice of deficiency, but sought to do so on brief. Under these circumstances, respondent was obliged to establish the factual basis for his contention. Rule 142, Tax Court Rules of Practice and Procedure.↩ Although we do not believe that he has done so, we prefer to rest our decision affirmatively on the acceptance of petitioner's credible testimony in this regard. 9. Mac Heed's 1962 return reflected $21,402.10 of merchandise purchases in the computation of cost of goods sold which, of course, is deducted in computing gross profit. There is no indication in the record herein that any expenditure of the $4,000 was not included in the $21,402.10.↩
10. On brief, petitioner contends that he must have told the agent that the purchased item was a "Hobart" generator.↩
11. Other itemized hotel bills in evidence show charges for local and long distance telephone service, laundry, tips, and drugs in addition to meals and lodging.↩
12. The 1965 figure includes the expenses attributable to petitioner's trip to Chicago and California to the extent we hold that they were incurred for business purposes. ↩
13. As previously noted, the $7,800 paid by Mac Heed to agents employed abroad and the $4,000 paid to discharge indebtedness of Mac Heed are also not constructive distributions to petitioner (see p. 13, supra). The $2,900 paid by Mac Heed to Robert Woods is to be treated as such a distribution. See p. 14, supra↩.